UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| APRIL BELL<br><br>          Plaintiff,<br><br>v.<br><br>SURVEY SAMPLING INTERNATIONAL, LLC, *et al*.<br><br>          Defendants. | No. 3:15-CV-1666 (MPS) |

**MEMORANDUM OF DECISION**

In this putative class action, Plaintiff April Bell alleges that Survey Sampling International, LLC ("SSI"), made a single, unwanted automated telemarketing call to her, and similar unwanted calls to many others throughout the country. Ms. Bell brings claims against SSI and twenty John Does allegedly acting as its agents for violation of the federal Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA") (Counts One and Two), violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* ("CUTPA") (Count Three), and unjust enrichment (Count Five).[1]

SSI has moved to dismiss the complaint for lack of subject matter jurisdiction in light of two recent U.S. Supreme Court decisions, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) and *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), as well as for failure to state a claim. Following *Spokeo*, SSI argues, the receipt of a single robocall in violation of the TCPA is not a sufficiently concrete injury to establish constitutional standing. And following *Campbell-Ewald*,

---

[1] Ms. Bell also brought an alternative claim of violation of California law (Count Four), but stated that she was abandoning that claim in her memorandum in opposition to the motion to dismiss. (ECF No. 52 at 41.) That claim is dismissed.

1

SSI argues, the case is moot because SSI tendered full payment for damages, sought to deposit settlement funds with the court, and consented to individual injunctive relief. For the reasons explained below, I conclude that I do have subject matter jurisdiction and Ms. Bell has adequately pled a TCPA claim, but that her CUTPA and unjust enrichment claims fail.

The motion to dismiss (ECF No. 49) is therefore GRANTED in part and DENIED in part. I also DENY SSI's separate motion to strike (ECF No. 50) and DENY without prejudice its motion to deposit funds with the Court (ECF No. 38).

## I.     Background

According to the allegations in the first amended complaint, SSI is a company headquartered in Connecticut, and Ms. Bell is a resident of California. (ECF No. 47 ¶¶ 5-6.) On or around September 30, 2015, "Defendant contacted Plaintiff on her cellular telephone at (925) 465-\*\*\*\*, in an attempt to communicate with Plaintiff regarding a survey questionnaire." (*Id.* ¶ 10.) The call "came from what is believed to be an internet generated spoof number starting with area code prefix (925). Defendant is known to use the number (925) 438-0505." (*Id.*) Ms. Bell did not consent to receive the call. (*Id.* ¶ 23.) Ms. Bell "distinctly heard a pause after answering the Defendants' intrusive phone call, resulting in a delay prior to a live person speaking indicative of an automated telephone dialing system." (*Id.* ¶ 11.) According to Ms. Bell, SSI has a widespread practice of placing improper robocalls to cell phones. (*Id.* ¶¶ 15-18.) "[N]umerous other complaints confirm Defendants['] improper use of this very phone number for unwanted automated robocalls from 925-438-0505," and "Defendant's [sic] improper robocalling is not limited to the number that called Ms. Bell, but rather numerous places throughout the country." (*Id.* ¶¶ 12, 14.)

Ms. Bell initiated this putative class action on November 16, 2015. (ECF No. 1.) On February 8, 2016, SSI's counsel served Ms. Bell's counsel with an offer of judgment pursuant to

Fed. R. Civ. P. 68, a settlement offer, and two bank checks totaling $20,000. (ECF No. 49-2 at 1, 5-7, 9-10, 12-13.) Ms. Bell's counsel sent a rejection of the offer via email and then mailed back the two checks on February 11, 2016. (*Id.* at 1-2, 15-19.) On March 3, 2016, SSI filed a motion to dismiss. (ECF No. 35.) On March 9, 2016, SSI's counsel tendered and served a $2,500 check on Ms. Bell's counsel and filed a motion to deposit $5,000 in funds with the Court. (ECF Nos. 38; 49-2 at 2, 21-24.) Ms. Bell's counsel again sent a rejection of the offer and returned the check. (ECF No. 49-2 at 2, 26-29.) With leave of the Court, Ms. Bell filed a first amended complaint (the operative complaint in this case), on May 3, 2016. (ECF No. 47.) SSI then renewed its motion to dismiss on May 13, 2016, and also filed a motion to strike. (ECF Nos. 49; 50.) After the motion to dismiss was fully briefed, several courts across the country issued relevant decisions interpreting both *Campbell-Ewald* and *Spokeo*. The parties each filed motions for leave to file notice of these supplemental authorities (ECF Nos. 56; 57), which I GRANT.

## II.     Legal Standard

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should be granted "when the district court lacks the statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). For example, "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). Mootness also deprives the court of subject matter jurisdiction: it is "not enough that a dispute was very much alive when suit was filed; the parties must continue to have a personal stake in the ultimate disposition of the lawsuit." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (citation and quotation marks omitted).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I take the plaintiffs' factual allegations in the complaint "to be true and [draw] all reasonable inferences in" their favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. Discussion

#### A. Standing Under *Spokeo*

SSI first argues that Ms. Bell lacked standing to bring this case because the alleged receipt of a single unwanted robocall was not a sufficiently concrete injury. For a plaintiff to have standing under Article III of the U.S. Constitution, the plaintiff must have suffered an "injury in fact" that is "fairly traceable to the challenged action of the defendant" and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992) (citations, quotation marks, and alterations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citation and quotation marks omitted).

In *Spokeo*, the Supreme Court addressed the "concreteness" requirement of standing in the context of a violation of the Fair Credit Reporting Act, where the plaintiff alleged that a website operator generated a profile of him that included inaccurate information. The Court held that

"Article III standing requires a concrete injury even in the context of a statutory violation" and "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it." *Id.* at 1549.  While "intangible harms" and "the risk of real harm" could satisfy the injury-in-fact requirement, "a bare procedural violation, divorced from any concrete harm," could not. *Id.* The Court explained that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles," and remanded the case for consideration of whether the alleged statutory violation met the concreteness requirement. *Id*.

Answering a single robocall, as Ms. Bell did in this case, is the type of concrete injury-in-fact that has been upheld by the Second Circuit and U.S. Supreme Court. In another TCPA case, the Second Circuit held that receiving two voicemails and listening to them on an answering device "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, 2017 WL 659894, at *1 (2d Cir. Feb. 15, 2017) (summary order). The court also favorably cited an Eleventh Circuit case "holding that injury under [a] similar TCPA provision may be shown by one-minute occupation of fax machine." *Id.* (citing *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015)). And in *Campbell-Ewald*, although the Supreme Court's majority opinion did not expressly address standing, even the dissenters agreed that the receipt of a single unauthorized text message conferred standing. 136 S. Ct. at 679 (Roberts, J., dissenting) ("All agree that at the time Gomez filed suit, he had a personal stake in the litigation. In his complaint, Gomez alleged that he suffered an injury in fact when he received unauthorized text messages from Campbell.") Answering a single unauthorized phone call lasting two minutes (ECF No. 52-1 at 2) is just as

5

concrete a harm as listening to two voicemails, receiving a single minute-long fax, or reading a single text message.

Many courts outside the Second Circuit have agreed that receiving a robocall is a concrete, intangible injury under *Spokeo*, even without actual financial harm. Thus, although Ms. Bell did not incur any charge for the phone call (ECF No. 52-1 at 2, 4), "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). *See also Ung v. Universal Acceptance Corp.*, 198 F. Supp. 3d 1036, 1038 (D. Minn. 2016) ("Cases… have repeatedly recognized that the receipt of unwanted phone calls constitutes a concrete injury sufficient to create standing under the TCPA."). *But see Sartin v. EKF Diagnostics*, *Inc.*, 2016 WL 3598297, at *4 (E.D. La. July 5, 2016) (allegations that plaintiff had received an unwanted fax advertisement "establish nothing more than a bare violation of the TCPA, divorced from any concrete harm to [plaintiff].")

"[B]oth history and the judgment of Congress," *Spokeo*, 136 S. Ct. at 1549, further support the conclusion that receiving an unwanted telemarketing call is an intangible injury-in-fact. First, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*  Invasion of privacy is just such an intangible harm recognized by the common law. "Actions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states." *Van Patten*, 847 F.3d at 1043. "In essence, the TCPA can be seen as merely liberalizing and codifying the application of this common law tort to a particularly intrusive type of unwanted telephone call." *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 645 (N.D.W. Va 2016). Second, "because

Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Spokeo*, 136 S. Ct. at 1549. Here, in enacting the TCPA, Congress found that unsolicited telephone calls were themselves an intangible, concrete injury. Congress sought to "protect consumers from the 'nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate.'" *Caudill v. Wells Fargo Home Mortg., Inc.*, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (quoting Rules & Regulations Implementing the Telephone Consumer Protection Act, 30 F.C.C.R. 7961, 7979 (2015)). "The session law for the TCPA itself stated: 'Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'" *Van Patten*, 847 F.3d at 1043 (quoting Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶ 12).

And in any event, the TCPA is distinct from the Fair Credit Reporting Act at issue in *Spokeo* and the statutes in other cases cited by SSI,[2] because it establishes a substantive right to be free from unwanted phone calls and texts. Unlike statutes that that impose procedures for data

---

[2]*See Gubala v. Time Warner Cable, Inc.*, 2016 WL 3390415, at *4 (E.D. Wis. June 17, 2016), *aff'd*, 846 F.3d 909 (7th Cir. 2017) (finding no concrete harm for a violation of the Cable Communications Policy Act where defendant had retained personally identifiable information beyond the time period allowed by statute, because plaintiff "does not allege that the defendant has disclosed his information to a third party. Even if he had alleged such a disclosure, he does not allege that the disclosure caused him any harm. *He does not allege that he has been contacted by marketers* who obtained his information from the defendant….") (emphasis added); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) ("[Plaintiff] argues that the data breach has caused a loss of privacy that constitutes an injury in fact. However, she has not identified any potential damages arising from such a loss and thus fails to allege a 'concrete and particularized injury.'")

management, information verification, or record-keeping to reduce risks of harm, the TCPA prohibits actions that actually harm consumers, however slightly. *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ( "[T]he injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice." (alterations and internal quotation marks omitted)). The TCPA "directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA." *A.D. v. Credit One Bank, N.A.*, 2016 WL 4417077, at *6 (N.D. Ill. Aug. 19, 2016).

Therefore, I conclude that Ms. Bell had standing to bring this case.

### B. Mootness Under *Campbell-Ewald*

Next, SSI argues that the case is moot because it tendered full payment to Ms. Bell, moved to deposit payment with the court, and agreed to individual injunctive relief. A claim generally becomes moot when subsequent events eliminate the controversy between the parties: "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Chafin*, 133 S. Ct. at 1023 (citation and quotation marks omitted). A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees*, 567 U.S. 298 (2012) (quotation marks omitted). In *Campbell-Ewald*, the Supreme Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." 136 S. Ct. at 672. However, the Court reserved judgment on "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* More recently, the Second Circuit held by summary order that a court could enter judgment in a TCPA case if the defendant tendered a deposit in the full amount of the individual claim, but only after the court had already denied class certification. *Leyse*, 2017 WL 659894 at *3.

The question at issue in this case, whether a case becomes moot where the tender "was rejected *prior* to resolution of the plaintiff's class-certification motion," remains undecided. *Id*. at *3, n.2 (emphasis in original). But the Second Circuit has commented in dicta, "that an attempt by the defendant to use the tactic described in the *Campbell–Ewald* hypothetical… might not work. The Supreme Court's criticism of similar tactics suggests that Rule 68 should be harmonized with Rule 23…. We do no more than observe the obvious: an attempt to make use of the hypothetical posited in *Campbell–Ewald* is not guaranteed to bear fruit." *Geismann v. ZocDoc, Inc. et. al,* 2017 WL 929165, at *6 (2d Cir. Mar. 9, 2017).

In my view, Ms. Bell's claim here is not moot, in spite of SSI's offer to deposit the funds in court, for two reasons. First, it is plain that, at this stage, when the funds have not yet been paid into the court or, more importantly, disbursed from the court to the plaintiff, and a judgment has not yet been entered for the plaintiff imposing the proposed injunction, the case cannot *yet* be moot. Indeed, if the mere making of the tender, including, in this case, sending the check, were enough to moot the case, the court would arguably not have jurisdiction either to grant the motion to deposit funds into the court or to enter judgment. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Even the hypothetical described in *Campbell-Ewald* contemplates that the question of mootness in a case involving a deposit into court of settlement funds would arise only after the court took the step of entering judgment. 136 S. Ct. at 672 (reserving judgment on mootness where "defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, *and the court then enters judgment for the plaintiff in that amount*." (emphasis added)); *see also Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 636 (S.D.N.Y. 2014) ("[B]ecause the Rule 68 Offer itself did not moot Plaintiff's claim, and because the Court has not

9

entered judgment in Plaintiff's favor, there is no doubt that the Plaintiff's claim is currently not moot.") At this juncture, I have not entered judgment for Ms. Bell, and I have not yet decided whether to grant SSI's motion to pay funds into the registry—a discretionary determination, *Geismann*, 2017 WL 929165 at *6—let alone whether and on what terms to permit the clerk to disburse the funds. *See* Fed. R. Civ. P. 67 (requiring "leave of court" to deposit funds); 28 U.S.C. § 2042 ("No money deposited [into court] shall be withdrawn except by order of court.")  Ms. Bell "thus remains emptyhanded," *Geismann*, 2017 WL 929165 at *5, as she has not actually received the relief she seeks. Under these circumstances, even assuming that SSI's tender would have afforded Ms. Bell complete relief, the court retains jurisdiction to decide what steps to take next in the litigation.

That brings me to the second reason the case is not moot: there is still a case or controversy for the court to resolve, which is whether a class should be certified. This is not a case where "there is nothing left for the district court to do except enter judgment." *McCauley v. Trans Union, L.L.C.*, 402 F.3d 340, 342 (2d Cir. 2005) (citation and quotation marks omitted). There is thus good reason for me to exercise my discretion to deny the motion to deposit funds into court, and to refrain from entering judgment, until after I have decided the class certification issue.

Furthermore, cases allowing a defendant to "pick off" plaintiffs simply by making a tender of complete relief[3] deny plaintiffs a fair opportunity to pursue class claims and are contrary to the

---

[3] *See, e.g. Fulton Dental, LLC v. Bisco, Inc.*, 2016 WL 4593825 at *8, 14 (N.D. Ill. Sept. 2, 2016) (Individual claims became moot because defendant's tender was an "unconditional surrender backed by immediate action." Class claims also became moot because the plaintiff had not yet filed a motion for class certification, and "[seventh] circuit precedent is clear that… when a plaintiff's individual claims are moot *before* the motion's filing, the proposed class members do not have a live claim against the defendants.") (emphasis in original); *Grice v. Colvin*, 2016 WL 1065806, at *7 (D. Md. Mar. 14, 2016) (where defendant tendered complete relief, plaintiffs' individual claims became moot, and "because their claims became moot before a class was certified, this action must be dismissed.").

spirit of *Campbell-Ewald*. As the Supreme Court explained, "[w]hile a class lacks independent status until certified, a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Campbell–Ewald*, 136 S.Ct. at 672 (internal citation omitted). Accepting SSI's argument "would place control of a putative class action in the defendant's hands" and allow "use of individual offers to thwart class litigation." *Ung v. Universal Acceptance Corp.*, 190 F. Supp. 3d 855, 863 (D. Minn. 2016). Such a result would be inconsistent "not only with *Campbell–Ewald* but also with previous Supreme Court decisions noting a named plaintiff's personal stake in obtaining class certification." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016) (quotation marks omitted) (citing *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 404 (1980) and *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980)).

Instead, I join the many other courts, including courts in this Circuit, in concluding that full tender does not moot a putative class action prior to a decision on class certification. *See, e.g. Maddox v. Bank of N.Y. Mellon Trust Co.*, 2016 WL 4541587, at *2, 4 (W.D.N.Y. Aug. 31, 2016) (in a putative class action, defendant's tender of "plaintiff's maximum statutory recovery, as well as his costs… and consent to an injunction," "is not the equivalent of an agreement that would moot this case."); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, 167 F. Supp. 3d 582, 584 (S.D.N.Y. 2016) (where initial class certification motion was denied without prejudice to renewal after discovery, tender did not moot the case—Plaintiff was still entitled to "a fair opportunity to show that class certification is warranted."); *Chen*, 819 F.3d at 1147 ("[W]hen a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has

11

had a fair opportunity to move for class certification."); *Ung*, 190 F. Supp. 3d at 862 ("The Court has not yet had an opportunity to pass on that Motion [for Class Certification]—indeed, it was stayed while the Court considered mootness—and thus [plaintiff] maintains an interest in this litigation that is not subsumed by [defendant's] tender, which offers no class-wide relief."); *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, 2016 WL 3064054, at *3 (D. Mass. May 31, 2016) (collecting cases and concluding, "[t]he rationale of these cases may differ, but the result is the same: a defendant cannot moot a proposed class action solely by paying off the named plaintiff.")

Therefore, at this stage of the litigation, the case is not moot.

### C. TCPA Claim

SSI also argues that Ms. Bell did not adequately plead a TCPA claim because (1) she did not actually allege that she received a call from SSI's phone number and (2) the alleged facts do not support an inference that SSI used an automated dialing system. I disagree.

First, Ms. Bell alleged that the call to her "came from what is believed to be a generated spoof number starting with the area code prefix (925)," "Defendant is known to use the number (925) 438-0505," and "numerous other complaints confirm Defendants improper use of this very phone number for unwanted automated robocalls from 925-438-0505."  (ECF No. 47 ¶¶ 10, 12.) Although the allegations are not crystal-clear, drawing reasonable inferences in Ms. Bell's favor, I find that these statements plausibly allege that the call came from the number 925-438-0505, which is associated with SSI.

Second, Ms. Bell plainly alleged that "Defendant used an automated telephone dialing system." (*Id.* ¶ 20 (quotation marks and citation omitted).) She supported this allegation with the factual detail that she "distinctly heard a pause" after answering the call from SSI, "resulting in a delay prior to a live person speaking indicative of an automated telephone dialing system." (*Id.* ¶

11.) *See also* Federal Communications Commission (FCC), Report and Order, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 at 40 (February 15, 2012), *available at* https://apps.fcc.gov/edocs_public/attachmatch/FCC-12-21A1.pdf ("[P]redictive dialers may either 'hang-up' on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as 'dead air.'")  This is sufficient to support an inference that SSI used an automated dialing system. As the Second Circuit recently explained in a decision reversing dismissal of a TCPA complaint, "[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers…. The *Twombly* plausibility standard, which applies to all civil actions[,] does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 96–97 (2d Cir. 2017) (internal citations, quotation marks, and alteration omitted).

### D.  CUTPA Claim

Ms. Bell's CUTPA claim must be dismissed because Connecticut law does not apply to this case. Under Connecticut choice of law principles, an unfair trade practices claim is "determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 558 (2016) (citation, quotation marks, and alteration omitted). To determine which state has the most significant relationship, courts must consider four "black-letter rules of priority":

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties

> is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* at 559 (citation and quotation marks omitted). Those priority rules serve to inform the following seven factors:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* at 558-59 (citation, quotation marks, and alteration omitted).

Just as the Connecticut Supreme Court did in *VitalWorks*, I conclude that the state of the plaintiff's residence, where the injury took place, has a more significant relationship "to the occurrence and the parties" than the state where the defendant corporation is headquartered. *Id.* at 558. First, (a), the injury occurred "where the plaintiff suffered the adverse consequences"—in this case, California. *Id.* at 559. Second, (b), while the injury-causing conduct can be "consequences of an earlier occurrence," *id.*, Ms. Bell does not sufficiently allege that the call originated from Connecticut. Instead, she states that the call came from a California area code and only alleges generally that "efforts are lead [sic] and directed from SSI's Connecticut headquarters." (ECF No. 47 ¶ 13.) Third, (c), residence is a "neutral factor" where the parties are located in two different states. *VitalWorks*, 322 Conn. at 560. Fourth, (d), the center of the relationship is in California, because, again, the complaint states that the call was sent and received by numbers with California area codes. In other words, each of the four priority rules are either neutral or weigh in favor of applying California law. Moreover, as the *VitalWorks* court explained, "although Connecticut undoubtedly has an interest in applying its law to ensure that local businesses do not engage in unfair trade practices in this state, that interest is not especially

14

strong… in view of the limited nature of the contact that occurred between the parties in Connecticut." *Id.* at 561. On the other hand, the plaintiff's state of residence has a stronger "interest in protecting its citizens and commercial enterprises from unfair or deceptive trade practices." *Id.*

The Connecticut Supreme Court also considered state choice-of-law questions in the context of a similar TCPA claim. The court reasoned that, "[a]lthough the defendants are residents of Connecticut, the fax complained of was both sent and received in New York. Because the alleged injury occurred in New York and because application of New York law does not produce an arbitrary or irrational result, we conclude that New York law applies to the present action." *Weber v. U.S. Sterling Sec., Inc.*, 282 Conn. 722, 737 (2007). The same logic applies here.[4]

### E. Unjust Enrichment

Finally, whether under Connecticut or California common law, Ms. Bell has failed to state a claim for unjust enrichment. A claim for unjust enrichment requires that the defendant received a benefit at the plaintiff's expense. *See Town of New Hartford v. Connecticut Res. Recovery Auth.*,

---

[4] Even if Connecticut law applied, it appears unlikely that Ms. Bell could sustain her burden of proving the "ascertainable loss" required by CUTPA. "[T]o be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation.... a loss is ascertainable if it is measurable even though the precise amount of the loss is not known." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 218 (2008) (internal citations, quotation marks, and alteration omitted). The record includes materials showing that Ms. Bell incurred no charges or other economic harm because of the call from SSI. (ECF No. 52-1 at 2, 4.) While the annoyance of receiving an unwanted robocall is enough for Article III standing, it is not enough to satisfy the "ascertainable loss" requirement of CUTPA. "[E]motional distress does not constitute an ascertainable loss of money or property for purposes of CUTPA." *Di Teresi v. Stamford Health System, Inc.*, 149 Conn. App. 502, 512 (2014). *See also Larobina v. Wells Fargo Bank, N.A.*, 632 F. App'x 55, 56-57 (2d Cir. 2016) (affirming dismissal of CUTPA claim for lack of ascertainable loss in case involving "telephone calls that repeatedly and incorrectly charged [Plaintiff] with delinquency on his mortgage," and noting that *Di Teresi*'s "authoritative interpretation of the statute accords with the most natural reading of the statutory text and confirms the same overwhelming construction of Superior Courts of Connecticut since 2003.") Nonetheless, because the materials in the record go beyond the complaint, I do not rely on the absence of an ascertainable loss in dismissing the CUTPA claim under Fed. R. Civ. P. 12(b)(6).

291 Conn. 433, 451–52 (2009) ("A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another…. Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (citation and quotation marks omitted)); *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) ("A person is enriched if he receives a benefit at another's expense…. a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss. Even when a person has received a benefit from another, he is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." (internal citations and quotation marks omitted)).

Here, Ms. Bell makes only the conclusory statement that "Defendant has obtained substantial benefit as a direct result of their invasion of the privacy of Plaintiff and members of the Plaintiffs class." (ECF No. 47 ¶ 63.) She does not allege that SSI received any money or property from her, directly or indirectly, or even that she participated in SSI's survey questionnaire. There are no facts in the complaint suggesting that SSI received any benefit as a result of its interaction with her. Her unjust enrichment claim therefore fails as a matter of law.

## IV. Motion to Strike

Separately, SSI moves to strike certain portions of Ms. Bell's complaint under Fed. R. Civ. P. 12(f). (ECF No. 50). In exercise of my considerable discretion regarding motions to strike, I DENY that motion.

"Resolution of a Rule 12(f) motion is left to the district court's discretion, and such motions are generally disfavored and infrequently granted." *Maratea v. State of Connecticut Dep't of Educ.*, 2016 WL 777902, at *4 (D. Conn. Feb. 29, 2016). *See also First Aviation Servs., Inc. v. NetJets, Inc.*, 2014 WL 3345175, at *3 (D.N.J. July 8, 2014) (noting that although motions to strike pleadings are allowed under Rule 12(f), they are disfavored and "are commonly a waste of everyone's time."). In order to prevail on its motion to strike, SSI "must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; *and* (3) that to permit the allegations to stand would result in prejudice to the movant." *HSN Nordbank AG v. RBS Holdings USA Inc.*, 2015 WL 1307189, at *3 (S.D.N.Y. Mar. 23, 2015) (citation and quotation marks omitted, emphasis added).

First, SSI argues that several of Ms. Bell's allegations are "inadmissible," "immaterial," and "irrelevant." (ECF No. 501-1 at 5.) But SSI has not shown that the allegations they seek to strike "have no bearing on the issues in this case." *HSN Nordbank AG*, 2015 WL 1307189, at *3. Moreover, *"*questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Second, SSI argues that I should strike Ms. Bell's claim for attorneys' fees, because attorneys' fees are not recoverable under the TCPA.[5] "A demand for damages that are not recoverable as a matter of law may be stricken." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp.

---

[5] SSI also moves to strike certain damages claims under CUTPA, unjust enrichment, and California law. However, as discussed above, those claims have now been dismissed.

2d 363, 383 (S.D.N.Y. 2004). SSI is correct that "[t]he TCPA makes no provision for attorney's fees or costs." *Klein v. Vision Lab Telecommunications, Inc.*, 399 F. Supp. 2d 528, 542 (S.D.N.Y. 2005). However, Ms. Bell is also correct that if the class were certified and the litigation ultimately resulted in a common fund benefiting unnamed class members, I could "award attorneys' fees… under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In this case, denying the motion to strike the attorney's fees claim would not "result in prejudice to the movant." *HSN Nordbank AG*, 2015 WL 1307189, at *3. The parties may rest assured that the court will not ultimately award attorneys' fees where they are not authorized by law.

### V. Conclusion

As set forth above, SSI's motion to dismiss (ECF No. 49) is GRANTED in part and DENIED in part, and SSI's motion to strike (ECF No. 50) is DENIED. SSI's motion to deposit funds (ECF No. 38) is DENIED without prejudice to renewal after the conclusion of any class certification proceedings. The parties' motions for leave to file notice of supplemental authorities (ECF Nos. 56; 57) are GRANTED. This putative class action may proceed as to the TCPA claim only (Counts One and Two). Within 14 days, the parties shall file an updated 26(f) Report, which shall address, among other things, a schedule for any class certification proceedings.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           March 15, 2017